

FILED
FEB 2 2 2012
CLERK

# United States District Court
## DISTRICT OF SOUTH DAKOTA
### CENTRAL DIVISION

| | |
|---|---|
| WADE HARDES; KERI HARDES; MIKE HARDES; PENNY HARDES; MARK HARDES; and SERESA LINDBERG (f/k/a SERESA HARDES), | CIV. 12-3005 |
| Plaintiffs, | |
| vs. | **COMPLAINT AND JURY TRIAL DEMAND** |
| NAU COUNTRY INSURANCE COMPANY; RABO AGINSURANCE SERVICES, INC.; AMY JO HAPKA; and BARBARA A. MEAD, | |
| Defendants. | |

Plaintiffs, for their complaint against the defendants, state and allege as follows:

## JURISDICTION

1.     This action is brought pursuant to 28 USC § 1332 in that the parties are citizens of different states and the amount in controversy is in excess of Seventy-five Thousand Dollars ($75,000.00), exclusive of costs and interest.  Jurisdiction is proper.

## NATURE OF THE ACTION

2.     This is an action for damages for indemnification of prevented planting crop losses sustained by plaintiffs during the 2008 crop year.

## VENUE

3.　Pursuant to 28 USC § 1391, venue for this cause of action is in the Central Division of the District of South Dakota because all contracts were entered into in Hand County and the losses were sustained in Haakon County. This court has proper venue.

## THE PARTIES

**Plaintiffs:**

4.　Plaintiffs Wade Hardes and Keri Hardes are husband and wife and at all times material to this complaint were citizens of and persons residing in the State of South Dakota.

5.　Plaintiffs Mike Hardes and Penny Hardes are husband and wife and at all times material to this complaint were citizens of and persons residing in the State of South Dakota.

6.　Plaintiff Mark Hardes at all times material to this complaint was a citizen of and a person residing in the State of South Dakota.

7.　Plaintiff Seresa Lindberg, formerly known as Seresa Hardes, at all times material to this complaint was a citizen of and a person residing in the State of South Dakota.

8.　Plaintiffs hereafter shall be referred to individually by their first names.

**Defendants:**

9.　Defendant NAU Country Insurance Company (hereafter "NAU") is a commercial insurance corporation organized under and by virtue of the laws of the State of Minnesota with its principal executive office in Ramsey, Minnesota.

10.     Defendant Rabo AgInsurance Services, Inc. (hereafter "Rabo"), is a corporation organized under and by virtue of the laws of the State of Delaware with its principal executive office in Cedar Falls, Iowa.

11.     Defendant Amy Jo Hapka (hereafter "Hapka"), upon information and belief, is a citizen of and a person residing in Warren, Minnesota, with her business office in Grand Forks, North Dakota.  At all times material to this complaint, Hapka was licensed by the South Dakota Division of Insurance as a Non-Resident Producer to sell, solicit or negotiate crop insurance to persons or entities in the state of South Dakota.

12.     Defendant Barbara A. Mead (hereafter "Mead"), upon information and belief, is a citizen of and a person residing in the State of Iowa.  At all times material to this complaint, Mead was licensed by the South Dakota Division of Insurance as a Non-Resident Producer to sell, solicit or negotiate crop insurance to persons or entities in the state of South Dakota.

13.     Upon information and belief, plaintiffs allege that at all times material herein Mead and Hapka were employed by and acting in furtherance of the business objectives of Rabo and within the course and scope of their employment or agency with Rabo.  Plaintiffs allege that Rabo, therefore, is liable for the acts, negligence and omissions of Mead and Hapka as its employees, agents or servants.

14.     Upon information and belief, plaintiffs allege that at all times material herein Rabo was acting in furtherance of the business objectives of NAU and within the course and scope of its agency with NAU.  Plaintiffs allege that NAU, therefore, is liable for the actions and omissions of Rabo and its employees, agents or servants.

## FACTS COMMON TO
## ALL CAUSES OF ACTION

**I.     Applications For Multiple Peril Crop Insurance With Prevented Planting Coverage**

15.     Plaintiffs at all times material to this complaint were family farmers who operated as a joint venture and through a South Dakota limited liability company known as Hardes Farms LLC.

16.     NAU at all times material to the complaint was approved by the Federal Crop Insurance Corporation (hereafter "FCIC") to insure agricultural commodities using FCIC-approved acceptable plans and to sell such crop insurance contracts.  NAU thereafter sold and serviced policies of Multiple Peril Crop Insurance (hereafter "MPCI") authorized under the Federal Crop Insurance Act, 7 U.S.C. §§ 1501, *et seq.*, Chapter 36. Premium rates and insurance terms and conditions for MPCI are established by the FCIC.

17.     NAU at all times material to this complaint was authorized and licensed to sell contracts for MPCI in the State of South Dakota in order to provide farmers like plaintiffs with comprehensive protection against weather-related causes of loss.

18.     At all times material to the complaint, the MPCI marketed and sold by NAU to farmers like plaintiffs was developed or approved by the FCIC and regulated by its administrative arm, the Risk Management Agency (hereafter "RMA").

19.     On or about March 4, 2008, plaintiffs, through Hardes Farms LLC, entered into a farm lease agreement of a west river South Dakota farm known as Diamond Ring Farms (hereafter "Diamond Ring").  All the family members contributed to the lease payments.

20.     Diamond Ring consisted of 1,062.0 acres in Stanley County and 33,991.35 acres in Haakon County.  **Figure A** below is a map showing all tracts of land in Diamond Ring.  The map is also attached hereto as **Exhibit A** and incorporated herein by reference.



Figure A

21.     Of the Diamond Ring acreage in Haakon County, 30,500.5 acres was deemed farmable cropland.  The farmable cropland in Haakon County is the subject of this action.  Hereafter, unless otherwise stated, all references to "cropland" mean the Diamond Ring farmable cropland in Haakon County.

22.     Rabo at all times material to this complaint held itself out to the general public as an agricultural insurance agency that assisted farmers in understanding their insurance needs and offered products to suit farmers and their operations.

23.     Rabo offered a policy of MPCI sold and marketed by NAU to farmers like plaintiffs to guarantee commodities production in adverse weather conditions.

24.    Rabo, as a licensed insurance agency and broker, and acting through its individual agents and employees, sold NAU's MPCI to farmers like plaintiffs and procured MPCI for farmers like plaintiffs.

25.    Plaintiffs at all times material to this complaint relied upon defendants to provide adequate and proper insurance services to them.

26.    Wade and Mike, for themselves and on behalf of all of the plaintiffs, met with Hapka on or about March 13, 2008, at plaintiffs' office in Miller, Hand County, South Dakota.  Hapka informed plaintiffs that she was a licensed insurance agent employed by Rabo and could assist plaintiffs in understanding their crop insurance needs.

27.    Upon information and belief, plaintiffs assert that Rabo, Hapka and Mead realized commissions on premiums or received other compensation if it sold NAU's policy of MPCI to plaintiffs.  Rabo, Hapka and Mead, therefore, entered on such service with plaintiffs for compensation.

28.    Hapka came to the meeting on March 13, 2008, with a number of maps which included the acreage for Diamond Ring.  Hapka informed plaintiffs that she was familiar with Diamond Ring and wanted to help them procure NAU's MPCI on Diamond Ring for the 2008 crop year, including insurance coverage for losses for prevented planting (hereafter "PP").

29.    Plaintiffs informed Hapka as follows:

(a)    They are a family operation with each plaintiff having a 1/6 interest in the operation;

(b)     They share equally in the expenses and income of the operation and do not separate commodities production but commingle all crops;

(c)     They share equally in the use of their machinery, equipment and labor;

(d)     Their standard farming method is to work the land in the most efficient way possible given the topography, weather and soil conditions, and the availability of labor and equipment;

(e)     They intended to plant Diamond Ring by starting in the southeast and working to the northwest and concluding in the western-most tracts;

(f)     The wheat crop grown in the area is typically winter wheat but, because they had not leased Diamond Ring before and the cropland had not been planted to winter wheat in the fall of 2007, they could not plant the cropland to winter wheat in the spring of 2008;

(g)     They intended to plant spring wheat so they could get the cropland into a rotation that would allow them to plant winter wheat in the fall of 2008; and

(h)     They had never farmed in Haakon County before.

30.     Defendants Rabo and Hapka, therefore, knew that plaintiffs had not planted any crop in Haakon County in the four crop years from 2004 – 2007 and thus were a "new producer" in Haakon County for purposes of obtaining crop insurance for PP losses.

31.     FCIC developed and promulgated the *Common Crop Insurance Policy*, *Terms and Conditions*, *Basic Provisions* as set forth in Part 457 of Title 7 of the Code of Federal Regulations (C.F.R.).  The procedures, including handbooks, issued by the FCIC

and published on RMA's website are used in administering its insurance policy. The policy provisions may not be waived or modified unless the policy specifically authorizes a waiver or modification by written agreement. 7 C.F.R. § 457.8, *Common Crop Insurance Policy, FCIC Policies.*

32.     PP is the inability to plant an intended crop acreage with proper equipment by the final planting date for the crop type in the county because of an insured cause of loss, such as a natural disaster. 7 C.F.R. § 457.8, *Common Crop Insurance Policy, Terms and Conditions, Basic Provisions,* Sec. 1 (Definition of Prevented Planting), Sec. 12 (Causes of Loss), and Sec. 17 (Prevented Planting).

33.     To be eligible for a PP claim, a new producer in the county must submit an "intended acreage report" to the loss adjuster by the sales closing date (hereafter "SCD") for all his insured crops. 7 C.F.R. § 457.8, Sec. 17(e)(1)(ii)(A)(1)(Prevented Planting). The SCD for all insured crops in Haakon County was March 15, 2008.

34.     To be eligible for a PP claim, the total number of acres listed on the intended acreage report may not exceed the number of acres of cropland in the producer's farming operation at the time he submitted the intended acreage report. The listed acreage on the report establishes the maximum number of acres that may be eligible for a PP claim. 7 C.F.R. § 457.8, Sec. 17(e)(1)(ii)(B)(Prevented Planting).

35.     FCIC interpreted Parts 11 and 457 of Title 7 of the C.F.R. and developed and promulgated standards for RMA and NAU to adjust PP losses for the 2008 crop season. The standards are set forth in the FCIC publication entitled <u>Prevented Planting Loss Adjustment Standards Handbook: 2008 and Succeeding Crop Years</u> (FCIC-25370

(10-2006), FCIC-25370-1 (01-2008)) (hereafter "Handbook").  5 USC § 552(a)(2)

required the Handbook to be indexed and made available to the public.  NAU, as an

Approved Insurance Provider (AIP), was required to utilize the standards contained in the

Handbook for loss adjustment and loss training for the 2008 crop year.

  36.  Section 7 of the Handbook set forth the requirements for intended acreage

reporting in order for plaintiffs to be eligible for PP loss coverage.  Section 7 provided in

pertinent part:

    **D.**  **<u>INTENDED ACREAGE REPORT</u>**

    (1)  **WHEN, IN THE FOUR MOST RECENT CROP YEARS AN INSURED DID NOT PLANT ANY CROP IN THE COUNTY FOR WHICH PP INSURANCE WAS AVAILABLE OR HAS NOT RECEIVED A PP INSURANCE GUARANTEE,** the insured must complete and submit an intended acreage report to the AIP prior to or on the SCD for the purpose of determining potential maximum number of eligible PP acres.  This is not to be considered the final acreage report for reported PP acres.  The final date for reporting PP acres is as stated in subsection E below.  (For the purpose of determining maximum eligible number of PP acres, the total number of acres reported on the Intended Acreage Report cannot exceed the number of acres of cropland available for planting in the insured's farm operation at the time the report is submitted.)  The eligible PP acres established by an approved intended acreage report, by crop, cannot be altered when acres are reported at acreage reporting time.  For example: if the intended acreage report indicates 1,000 acres of corn, the insured cannot later claim 500 acres of PP corn and 500 PP soybean acres.  The PP acres must remain as PP corn.  Also, see example in subsection 1 below (revised acreage report examples).

    (2)  The Application or Application/Acreage Report form must have a block clearly marked "Intended Acreage" to record acreage intended to be planted for a crop in order for acreage shown on an application to be considered "intended acreage" as stated in the prevented planting provisions of the Basic Provisions.  Acreage entered in a

block marked "Acreage[sic] or "Est. Acres" or "Estimated Acreage" cannot be considered "intended acreage."

37.    NAU and Rabo, its agent, were required to assist plaintiffs in accurately and timely completing an intended acreage report.

38.    On or before March 13, 2008, NAU adopted and utilized a MPCI application form (hereafter "application form") for the 2008 crop year.  NAU provided the application form to Rabo for use by its agents in applying for MPCI for farmers like plaintiffs.

39.    During their meeting on March 13, 2008, Hapka informed plaintiffs that rather than insure the cropland under a single MPCI policy with all plaintiffs as equal shareholders as the plaintiffs originally intended, the MPCI premiums would be less if plaintiffs utilized the "enterprise unit" concept (hereafter "EU").  Hapka advised dividing Diamond Ring into four EUs, with three of the EUs comprising the Haakon County cropland.  Relying upon the advice of Hapka, plaintiffs agreed to divide Diamond Ring into EUs solely to reduce their premium costs.

40.    Without concern for the most efficient planting pattern for the cropland or the availability of plaintiffs' shared equipment, machinery and labor, Hapka arbitrarily allocated EUs of the cropland as shown below in **Figure B**.  Seresa's EU is highlighted in pink.  Mark's EU in Haakon County is highlighted in green and his EU in Stanley County is highlighted in orange.  The remaining plaintiffs' EU is highlighted in yellow.  The map of the EUs is also attached hereto as **Exhibit B** and incorporated herein by reference.



Figure B

41.     Hapka allocated the acreages and shareholder interests for the EUs as follows:

| EU Assignee | % Interest In EU | Total EU Acres In Stanley County | Total Farmable EU Acres In Haakon County |
|---|---|---|---|
| Mike & Penny | 50% | | |
| Wade & Keri | 50% | 0 | 21,943.6 |
| Mark | 100% | 1,062.0 | 2,196.4 |
| Seresa | 100% | 0 | 6,360.5 |
| **TOTAL ACRES:** | | **1,062.0** | **30,500.5** |

42.     Hapka informed plaintiffs that a separate completed application would be required for each EU in each county and that each plaintiff's interest in his or her EU would be insured under a separate policy to be issued by NAU.  Hapka then produced several copies of NAU's application form.

43.     As Hapka filled out the application forms, Wade informed her that plaintiffs intended to plant all of Diamond Ring with spring wheat as a first crop.  Wade

also informed Hapka that, if plaintiffs were unable to plant spring wheat, they intended to plant sunflowers as a second crop.  Finally, Wade and Hapka agreed that, if plaintiffs were unable to plant sunflowers, they might be able to plant roughly half of Diamond Ring with grain sorghum as a third crop.

44.     Hapka then wrote as follows on the block for each application form entitled "CROP(S) & ACRES":

Mike & Penny and Wade & Keri application:

| [ x] Yes | NEW PRODUCER | CROP(S) & ACRES:                            grain |
|---|---|---|
| | | Wheat (14,000); Sunflower (14,000); Sorghum (10,000) |

Seresa application:

| [ x] Yes | NEW PRODUCER | CROP(S) & ACRES:                            grain |
|---|---|---|
| | | Wheat (10,000); Sunflower (10,000); Sorghum (5,000) |

Mark application:

| [ x] Yes | NEW PRODUCER | CROP(S) & ACRES:                            grain |
|---|---|---|
| | | Wheat (10,000); Sunflower (10,000); Sorghum (5,000) |

45.     Hapka completed three separate applications for plaintiffs for the cropland. One application was completed by Hapka as a "spouse" application, with a 50% interest assigned to Wade and Keri and a 50% interest assigned to Mike and Penny.  Hapka completed individual applications for Mark and Seresa.

46.     After Hapka completed the application forms, she instructed plaintiffs to sign and date them.  Plaintiffs, in reliance upon Hapka, signed the applications on or before March 14, 2008.  Copies of the applications completed by Hapka for plaintiffs and signed by them are attached hereto as **Exhibit C** and incorporated herein by reference.

47.   Upon information and belief, the completed applications were reviewed by Mead and approved by her.  Each application was then submitted by Rabo to NAU by the SCD of March 15, 2008.

48.   At all times material to this complaint, defendants assured plaintiffs that all of the paperwork was in order and that plaintiffs had successfully complied with the requirements for MPCI coverage for PP losses in Haakon County for the 2008 crop year.

49.   At no time prior to March 15, 2008, did defendants provide plaintiffs with any other documentation or instructions on providing an acceptable intended acreage report to NAU.

50.   At no time prior to March 15, 2008, did defendants inform plaintiffs that plaintiffs must submit to NAU an acceptable intended acreage report by March 15, 2008.

51.   At no time prior to March 15, 2008, did defendants inform plaintiffs that the completed applications were not acceptable intended acreage reports.

52.   Following receipt of the applications from Rabo, NAU processed plaintiffs' applications as "new producers" in Haakon County.

53.   NAU promptly issued four MPCI policies to plaintiffs as follows:

Mike and Penny Hardes:    Policy No.:  SD-942-3033098-08
Wade and Keri Hardes:     Policy No.:  SD-942-3033099-08
Mark Hardes:              Policy No.:  SD-942-3033103-08
Seresa Hardes:           Policy No.:  SD-942-3033101-08

54.   The MPCI policies issued by NAU to plaintiffs contained the following total acreages of cropland:

Mark:        2,196.4 acres
Seresa:      6,360.5 acres

Mike & Penny (50%)
Wade & Keri (50%):        21,943.6 acres
                **Total:**    **30,500.5 acres**

55.     NAU thereby contractually agreed to indemnify plaintiffs as new producers

for PP losses for the Haakon County cropland for the 2008 crop year.

## II.    Spring Wheat Prevented Planting Losses

56.     Plaintiffs on or about March 17, 2008, began planting spring wheat on the

cropland.  Plaintiffs utilized the most efficient planting pattern for the cropland and

started planting in the southeast corner of Diamond Ring and began moving northwest

with the intention of concluding in the western-most tracts.

57.     At all times material to this complaint, plaintiffs had sufficient labor,

machinery, equipment, seed and inputs available to plant all of the cropland by the spring

wheat final planting deadline of May 5, 2008.

58.     Beginning on March 19, 2008, snow and rain fell in the area in such

amounts and under such conditions that plaintiffs could not operate their machinery.

Adverse weather conditions persisted thereafter to make it impossible for plaintiffs to

plant all of Diamond Ring.

59.     By the final planting date of May 5, 2008, plaintiffs had planted 17,554.5

acres of the cropland to spring wheat.  Notwithstanding their best efforts and good

farming practices, the adverse weather conditions prevented plaintiffs from planting the

remaining 12,946.0 acres by May 5, 2008.

60.     Plaintiffs, during the late planting period from May 5, 2008, to May 30,

2008, planted approximately 1,100 acres to spring wheat on May 19, 2008, May 20,

2008, and May 21, 2008, but were unable to plant the remaining 11,846.0 acres to spring wheat by May 30, 2008.

61.     The EU allocations arbitrarily assigned by Hapka did not comport with the efficient planting pattern plaintiffs intended to utilize for the cropland, that being from the southeast to the northwest and concluding in the west.  The EU allocations arbitrarily assigned by Hapka also did not comport with the availability of plaintiffs' shared machinery, equipment and labor.  For these reasons, the 17,554.5 acres of spring wheat plaintiffs planted were all located in the EU assigned by Hapka to Mike, Penny, Wade and Keri (highlighted in yellow in paragraph 40, Figure B).  Adverse weather conditions prevented plaintiffs from planting any acres in the EUs assigned by Hapka to Mark and Seresa.

62.     Believing the adverse weather conditions were an insurable cause of loss, plaintiffs on or before June 2, 2008, timely notified Hapka of their PP losses.

63.     Hapka filed plaintiffs' claims for indemnification under their MPCI policies with NAU.  NAU received notice of plaintiffs' claims on June 3, 2008.

64.     Plaintiffs notified defendants of the PP losses and damages, submitted due notices and proofs of loss to NAU, and performed all other terms and conditions of the policies of MPCI on plaintiffs' part to be performed, all in a timely and reasonable manner.

65.     NAU crop loss adjusters delayed two weeks and did not inspect the cropland to adjust the PP claims until June 17, 2008.

66.     On June 17, 2008, NAU crop loss adjusters inspected the cropland and verified:

(a)     The accuracy of the reported PP acres;

(b)     That there was an insurable cause of loss, i.e., adverse weather conditions, and;

(c)     That similar damage had occurred in the relevant area.

67.     NAU verified plaintiffs' spring wheat PP loss claims as follows:

| | |
|---|---|
| Mark: | 2,196.4  PP acres |
| Seresa: | 6,360.5  PP acres |
| Mike & Penny (50%) | |
| Wade & Keri (50%): | 4,389.1  PP acres |
| **Total:** | **12,946.0  PP acres** |

## III.     Plaintiffs' PP Damages

68.     In their applications for MPCI, plaintiffs selected coverage for 100% of the transitional yield (T-yield).  The T-yield in Haakon County in 2008 for spring wheat was 23 bushels per acre.  Plaintiffs also elected a spring wheat price of $11.11 per bushel at a 70% coverage level.

69.     To determine the total amount of the PP loss, the T-yield, coverage level percentage and per bushel price election are multiplied together.  The product is then multiplied by the PP guaranty reduction percentage of 60% to arrive at the amount per acre.  Finally, the amount per acre is multiplied by the total number of PP acres.

70.     Under the MPCI policies, the formula for determining plaintiff's PP loss is as follows:

T-yield • coverage level% • $price elect/bu.   = $x/acre
$x/acre • PP guaranty reduced %          = $y/acre
$y/acre • total PP acres                        = $z (total PP claim)

71.     Plaintiffs PP loss on the 11,846.0 acres that were not planted is calculated as follows:

23 bu./acre • 70% • $11.11/bu.  = $178.87/acre
$178.87/acre • 60%              = $107.32/acre
$107.32/acre • 11,846.0 PP acres      = **$1,271,312.70** (total PP claim)

72.     Of the 12,946.0 acres subject to the PP loss, plaintiffs planted 1,100 acres in the late planting period by May 21, 2008, which is 16 days after the final planting date of May 5, 2008.  For the late planted acres, plaintiffs' coverage level of 70% is reduced by 1% for every day after May 5, 2008, or 54% by May 21, 2008.

73.     Plaintiffs PP loss on the 1,100 late planted acres is calculated as follows:

23 bu./acre • 54% • $11.11/bu.  = $137.99/acre
$137.99/acre • 60%              = $82.79/acre
$82.79/acre • 1,100.0 PP acres       = **$91,069.00** (total PP late plant claim)

74.     The cost of the PP premium was $16.62 per acre.  Thus, the premium plaintiffs would have paid defendants for the 12,946.0 PP acres totaled $215,162.52.

75.     Plaintiffs PP damages of $1,362,381.70, less premiums of $215,162.52, equals a total MPCI indemnification of **$1,147,219.18**.

## III.   PP Claims Denied For Failure To Submit An Acceptable Intended Acreage Report

76.     Because the amount of plaintiffs' PP losses had a potential to exceed $500,000.00, FCIC participated in the adjustment of the claims.  NAU and FCIC thereafter completed a review of plaintiffs' PP claims.

77.    On December 10, 2009, Roger Klurfeld, Director of the USDA, Office of the Secretary, National Appeals Division, issued a final order of the Department of Agriculture. The order of Director Klurfeld concluded that plaintiffs were ineligible for 2008 PP payments for their spring wheat because they failed to submit acceptable intended acreage reports. The Director's order did not address any other contentions regarding the cause of plaintiffs' losses.

78.    FCIC concluded that the MPCI application form utilized by NAU and Rabo, and relied upon by plaintiffs as their intended acreage reports, did not comply with Sec. 7.D. of the Handbook for reporting a new producer's intended acreage.

79.    FCIC concluded that, by completing the applications in the manner set forth in paragraph 44 above, plaintiffs intended to plant a total of 88,000 acres of crops in Haakon County.

80.    At all times material to this complaint, plaintiffs were not aware and were not informed by defendants that the applications completed by defendants would be interpreted by loss adjusters as stating plaintiffs' intention to plant a total of 88,000 acres in Haakon County.

81.    Unbeknownst to plaintiffs, the documents prepared by defendants for plaintiffs failed in the following respects to constitute acceptable intended acreage reports for the Haakon County cropland for the 2008 crop year:

(a)    NAU's insurance applications could not be considered intended acreage reports as the applications did not comply with Sec. 7.D.(2) of the Handbook . NAU's applications did not have a block clearly marked

"Intended Acreage" to record the acreage intended by plaintiffs to be

planted for a crop.

(b)     The total number of acres reported by defendants on the applications

(88,000 acres) exceeded the number of acres of cropland available for

planting in Haakon County in the plaintiffs' farm operation at the time the

applications were submitted (30,500.1 acres).

82.     The requirement for an intended acreage report as set forth in Sec. 7.D. of

the Handbook had been a requirement of the FCIC since 2003.

83.     Plaintiffs at all times material to the complaint relied upon defendants to

submit acceptable intended acreage reports.

84.     Had plaintiffs been informed by defendants that plaintiffs must submit

intended acreage reports by the SCD and that the completed applications were not

acceptable intended acreage reports, plaintiffs would have submitted acceptable intended

acreage reports by the SCD.

85.     At all times material to this complaint, defendants failed to explain to

plaintiffs in procuring MPCI policies for plaintiffs under the EU concept:

(a)     That plaintiffs would be required to plant each EU in a manner that results

in a clear and discernible break in the planting patterns at the boundaries of

each EU;

(b)     That plaintiffs must maintain records to verify the production of each EU or

keep production from each EU separate; and

(c)    That each EU would be a separate producer for purposes of determining if the "cause of loss is general in the surrounding area and prevents other producers from planting acreage with similar characteristics." Handbook, p. 8.

86.    The Director's order of December 10, 2009, concluded plaintiffs' PP claims and resulted in plaintiffs receiving no indemnification on their claims.

87.    Defendants have refused and continue to refuse to indemnify plaintiffs the PP losses as sums which plaintiffs are legally entitled to recover against defendants. At all times mentioned, defendants knew that the insurance benefits were essential to plaintiffs' contract with defendants. At all times, defendants were and now are aware that they are obligated to pay promised benefits to plaintiffs.

88.    At all times material to this complaint, defendants have failed to indemnify and pay plaintiffs their damages under the terms and conditions of the policies of MPCI.

89.    As a direct and proximate result of the actions and omissions of defendants, plaintiffs suffered losses and damages in the amount of $1,147,219.18, along with other consequential and incidental damages.

## FIRST CAUSE OF ACTION
## NEGLIGENCE IN PROCURING INSURANCE COVERAGE

90.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 89 above as if fully set forth herein.

91.    At all times material to this complaint, NAU and Rabo knew or should have known of the requirements for an acceptable intended acreage report.

92.     At all times material to this complaint, defendants held themselves out to plaintiffs as knowledgeable of, and experienced with, the complex regulations regarding MPCI.

93.     At all times material to this complaint, defendants knew or should have known that plaintiffs did not possess knowledge of, or experience with, the complex regulations regarding the submission of an intended acreage report.

94.     At all times material to this complaint, defendants intended that plaintiffs rely upon them and knew that plaintiffs, in fact, did rely upon defendants to assist plaintiffs in complying with applicable regulations and to submit acceptable intended acreage reports for Haakon County for the 2008 crop year.

95.     As a direct and proximate result of the acts and omissions of defendants as alleged herein, plaintiff's PP losses have not been indemnified as more particularly set forth above.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

96.     Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 95 above as if fully set forth herein.

97.     At all times prior to their PP losses, defendants falsely and erroneously assured plaintiffs that they had submitted all the paperwork necessary to be eligible for PP, including the submission of acceptable intended acreage reports.

98.     Defendants knew that plaintiffs wanted to ensure that they had PP coverage and would rely upon defendants' assurances that such coverage was procured.

99.   Defendants intended that plaintiffs rely and act upon such assurances.

100.   Defendants knew that plaintiffs would be injured in their property if they relied upon defendants' assurances and the assurances were false or erroneous.

101.   The assurances by defendants that defendants had submitted all the paperwork necessary to be eligible for PP coverage, including the submission of acceptable intended acreage reports, and plaintiffs were covered and eligible for PP were false and erroneous.

102.   Plaintiffs had the right to rely upon defendants for correct and truthful information.

103.   Defendants owed a duty to plaintiffs to give information with care regarding their PP coverage and eligibility.

104.   As a direct and proximate result of the acts and omissions of defendants as alleged herein, plaintiff's PP losses have not been indemnified as more particularly set forth above.

### THIRD CAUSE OF ACTION
### IMPUTED NEGLIGENCE

105.   Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

106.   Rabo and its employees acted at all times as agents for NAU.

107.   NAU is responsible to plaintiffs for the actions and omissions of Rabo, Hapka and Mead in the transaction of the business of NAU, including all wrongful acts committed by such agents in and as part of the transaction of NAU's business.

108.    The actions and omissions of Rabo and its employees are imputed to NAU as its authorized agent in dealings with applicants like plaintiffs.

109.    As a direct and proximate result of the acts and omissions of defendants as alleged herein, plaintiff's PP losses have not been indemnified as more particularly set forth above.

## FOURTH CAUSE OF ACTION
## EQUITABLE ESTOPPEL

110.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 109 above as if fully set forth herein.

111.    At all times material to the complaint, defendants possessed superior knowledge to plaintiffs in purchasing policies of MPCI with PP coverage.

112.    Defendants misrepresented the coverage of the insurance contract to plaintiffs before or at the inception of the contract.

113.    Plaintiffs reasonably relied upon defendants' misrepresentations to their ultimate detriment.

114.    Plaintiffs were deprived of the opportunity to purchase the desired coverage elsewhere.

115.    Plaintiffs sustained loss on a risk from a peril that was not covered due to the failure to submit acceptable intended acreage reports.

116.    Defendants are estopped to deny coverage after plaintiffs' PP loss from adverse weather conditions.

117.    Estoppel is available to expand the terms of the MPCI policies to provide PP coverage to Plaintiffs.

118.    As a direct and proximate result of the acts and omissions of defendants as alleged herein, plaintiff's PP losses have not been indemnified as more particularly set forth above.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

119.    Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 118 above as if fully set forth herein.

120.    Plaintiffs agreed to purchase and defendants agreed to provide policies of MPCI with PP coverage.

121.    At all times material herein, plaintiffs relied upon defendants' skill, expertise, and judgment to assist plaintiffs in obtaining policies of MPCI with PP coverage.

122.    As a result of the defendants' actions and omissions, plaintiffs did not have MPCI coverage for their PP losses.

123.    Defendants, therefore, breached their contract with plaintiffs without excuse.

124.    As a direct and proximate result of the acts and omissions of defendants as alleged herein, plaintiff's PP losses have not been indemnified as more particularly set forth above.

## SIXTH CAUSE OF ACTION
## BREACH OF WARRANTIES

125.   Plaintiffs hereby incorporate by reference all statements and allegations contained in paragraphs 1 through 124 above as if fully set forth herein.

126.   Defendants were engaged in the business of providing policies of MPCI with PP coverage to farmers such as plaintiffs, and as such, impliedly warranted that the policies of MPCI sold were suitable for the ordinary purpose for which the policies were used, and that the policies of MPCI included PP coverage.

127.   Plaintiffs relied on defendant's skill and judgment and relied on defendants' warranties.

128.   The policies of MPCI sold, issued and delivered by defendants failed to perform the function or serve the purpose represented by defendants or intended by plaintiffs and, in fact, injured plaintiffs as set forth above.  The failure of defendants was due to a mistake or deficiency in the plan, specifications, and applications for the policies of MPCI, all of which were under the exclusive control of the defendants.

129.   Plaintiffs' incurred damage because the policies of MPCI sold, issued and delivered by defendants failed to perform the function or serve the purpose intended by defendant and plaintiffs.  As a result, defendants breached the implied warranty of fitness for a particular purpose, and the implied warranty of merchantability.

130.   Defendants expressly warranted by affirmation of fact or promise that the policies of MPCI would indemnify plaintiffs for their PP losses, upon which affirmations plaintiffs relied.

131.    The policies of MPCI sold, issued and delivered by Defendants were defective at the time of sale and application, and as such, defendants breached the express and implied warranties that the policies of MPCI would indemnify plaintiffs' PP losses.

132.    As a direct and proximate result of the acts and omissions of defendants as alleged herein, plaintiff's PP losses have not been indemnified as more particularly set forth above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1.    For actual and consequential damages in an amount in excess of $75,000.00, exclusive of interest and costs, as shall be determined by the trier of fact;

2.    For prejudgment interest through and including the date of judgment;

3.    For plaintiffs' costs, disbursements, and attorney's fees; and

4.    For such other and further relief as this Court may deem just and equitable.

Dated at Aberdeen, South Dakota, this 21st day of February, 2012.

Attorneys for Plaintiffs:

BANTZ, GOSCH & CREMER, LLC

Ronald A. Wager
P.O. Box 970
305 6th Ave. SE
Aberdeen, SD  57402-0970
(605) 225-2232
rwager@bantzlaw.com
James M. Cremer
jcremer@bantzlaw.com
Justin M. Scott
jscott@bantzlaw.com

## JURY TRIAL DEMAND

Plaintiffs, by and through counsel and pursuant to Federal Rule of Civil Procedure 38, demand a jury trial on all the issues so triable and submit the requisite fee herewith.

Dated at Aberdeen, South Dakota, this _21st_ day of February, 2012.

Attorneys for Plaintiffs:

BANTZ, GOSCH & CREMER, LLC

Ronald A. Wager
P.O. Box 970
305 6th Ave. SE
Aberdeen, SD  57402-0970
(605) 225-2232
rwager@bantzlaw.com
James M. Cremer
jcremer@bantzlaw.com
Justin M. Scott
jscott@bantzlaw.com